Morris W. TURNER, Plaintiff in Error,

v.

OKLAHOMA TAX COMMISSION,
Defendant in Error.

No. 36806.

Supreme Court of Oklahoma.

Dec. 13, 1955.

Rehearing Denied Jan. 10, 1956.

Hunt, Eagleton & Eagleton, Tulsa, for plaintiff in error.

R. F. Barry, W. F. Speakman, and E. J. Armstrong, Oklahoma City, for defendant in error.

JOHNSON, Chief Justice.

This is an appeal on the part of Morris W. Turner, hereafter referred to as "Protestant," from an order of the Oklahoma Tax Commission, hereafter referred to as "Commission," denying Protestant's protest to the proposed assessment of additional gift tax for the gift tax year 1950.

The parties entered into a stipulation covering the facts, which stipulation develops that Protestant and his wife were residents of Tulsa, Oklahoma, on June 16, 1941, and remained residents of said city. On said June 16, 1941, they elected to come under the provisions of Oklahoma's 1939 Community Property Act, Chap. 62, Article 2, p. 356, Session Laws 1939, and as residents of Oklahoma they became subject to Oklahoma's 1945 Community Property Act, Chap. 1, p. 118, Session Laws 1945, 32 O.S.A. §§ 51–82 note, which Act was repealed in 1949, p. 229, Session Laws 1949.

It was stipulated that as of June 16, 1941, Protestant and his wife each owned separate property which produced income during the period of time that they were subject to the aforementioned Community Property Acts; that during said period of time Protestant engaged in Oklahoma in numerous business activities from which he earned income. It was recited in the stipulation that "(A)'s income was received during said community property period; it was deposited in a common bank account from which living expenses and all other expenses of Protestant and his wife were paid either by checks drawn by Protestant or his wife."

It was also stipulated that on May 31, 1950, Protestant and his wife entered into an agreement in writing which was duly acknowledged and filed of record in the office of the County Clerk of Tulsa County, Oklahoma, by the terms of which agreement they undertook to divide their properties both separate and community equally. It was recited in the stipulation that "(I)n order to determine the amount of community property, or, more properly speaking, the value thereof, expenditures were deducted from income, giving the sum of $76,164.70 as the value of community property. In the matter of dividing said property or value, Protestant charged all living expenses other than income taxes paid on his wife's community income to himself. One-half of the amount so charged equaled $38,082.35."

The parties stipulated that on March 14, 1951, Protestant caused a gift tax return to be filed with the Commission, in which return he stated that he had transferred to his wife properties of the value of $82,-

606.70, which value for gift tax purposes was reduced by $67,616.14, which last named amount represented community living expenses less income taxes paid on community income. As a result of said reduction, the value of the property for gift tax purposes that Protestant reported as having transferred to his wife was stated to be $14,990.58, in connection with which value Protestant paid gift taxes in the amount of $139.81. The Tax Commission, following a field audit, subsequently proposed the assessment of additional gift taxes. In said assessment the value of the gift from Protestant to his wife was increased from $14,990.56 to $44,524.35, for a net increase of $29,533.79. On the increased value the Commission proposed to assess additional gift tax in the amount of $821.16, together with interest. It was recited in the stipulation that "(T)he effect of the proposed assessment was to deny unto Protestant his asserted right to charge all community living expenses to himself."

The concluding portion of the stipulation reads as follows:

"(9) It is agreed that if protestant in 1950 could by agreement with his wife or by operation of law or otherwise, charge all community living expenses to himself and thereby increase the value of his wife's interest in community property by $38,082.35 over what it would have been if community living expenses had been divided equally, then protestant has fully paid and discharged his 1950 gift tax liability for the reason that he did not in fact give $38,082.35 to his wife because said value was already hers, but if he could not, for gift tax purposes, properly do so, he gave his said wife $44,524.35 and not $14,990.56 as reported, and he owes additional gift taxes, together with interest as assessed."

From an order of the Commission denying Protestant's protest to the proposed assessment of additional gift taxes and assessing additional gift taxes in the amount proposed in said proposed assessment, this appeal was perfected.

The broad issue presented by this appeal is whether a wife's interest in community property is one-half of that received before expenses incident to maintaining the family are deducted or one-half of that remaining after such expenses are deducted.

At the time of the enactment of the Community Property Acts heretofore referred to, it was settled Community Property case law that community property represented that which is saved by the community and not that which is merely received by the community and that the interest of the husband and wife in that which is saved is equal. In Sec. 159, p. 445, Vol. 1, of his work entitled "Principles of Community Property," de Funiak has this to say:

"It was fundamental in the Spanish community property system, as would naturally be supposed in any community property system, that just as the gains and profits during marriage were shared between husband and wife, so were the losses and *expenses* incurred by reason of the *conjugal partnership*. For, as it was said, you cannot speak of profit unless losses and expenses are first deducted * * *." (Emphasis ours.)

The following will be found in the footnotes of the above citation:

" 'Until the common debts are paid, there are no "ganancias" or gains to divide.' Commodores Point Terminal Co. v. Hundnall, D.C., 283 F. 150, in reference to Spanish law formerly in force in Florida."

The author of 41 C.J.S., Husband and Wife, § 462, p. 985, states that the community property system "has been widely denominated as community of acquets and gains, and the community property has been termed 'the ganancial property.' "

The provisions of the Community Property Acts under consideration reflect that the Legislature did not intend to deviate from the principles of the Community Property Law which are above referred to and to the contrary, as reflected by the provisions of Sec. 3 of the 1945 Community Property Act, S.L.1945, pp.

118–119, 32 O.S.1951 § 3, intended to incorporate said principles into Oklahoma's Community Property Acts. Section 3 of the 1945 Community Property Act reads as follows:

"Section 3. All property acquired by either the husband or wife during marriage and after the effective date of this Act, except that which is the separate property of either as hereinabove defined, shall be deemed the community or common property of the husband and wife, and each shall be vested with an undivided one-half interest therein; and all the effects which the husband and wife possess at the time the marriage may be dissolved shall be regarded as common effects or gains unless the contrary be satisfactorily proved."

■ Debts which are incurred for the benefit of the community may be deducted in determining what constitutes community property, and since the expense of maintaining a family is incurred for the benefit of the community, such expense is deductible in determining what constitutes community property. 11 Am.Jur., Community Property, Sec. 64, p. 216; 41 C.J.S., Husband and Wife, § 517, pp. 1102, 1103. The provisions of Secs. 7 and 8 of each of the Community Property Acts under consideration are consistent with the Community Property Law announced by the cited authorities.

The Protestant contends that under the provisions of Title 32 O.S.1951 §§ 2, 3, 5, 9, 10 and 11, a husband both prior to and following the enactment of the Community Property Acts under consideration has the primary duty of supporting the family. Protestant stresses Sec. 3 of Title 32 O.S.1951, which section reads as follows:

"The husband must support himself and his wife out of the community property or out of his separate property or by his labor. The wife must support the husband when he has not deserted her out of the community property or out of her separate property when he has no community or separate property and he is unable from infirmity to support himself."

■ Protestant concludes and argues that since a duty was placed on him to support his wife, which duty could be and was discharged through the expenditure of community funds, funds so expended need not be taken into consideration in computing his wife's interest in their community property. A general application of this theory would result in a rule under which a member of the community who through circumstance is charged with the duty of supporting the other, irrespective of whether such member be the wife or the husband, is penalized by having his or her share in community property reduced by the amount of the living expenses that he or she pays. The statutes under consideration do not permit such rationalization. The statutes relied upon by Protestant did not form a part of our Community Property Acts and in fact were enacted long prior to 1939 and were not repealed upon the last Community Property Act being repealed in 1949. The fact that Sec. 3, supra, was amended in 1945 so as to refer to community property for the first time does not indicate that the Legislature intended to change the provisions of the Community Property statutes by requiring that the interest of the husband who has paid the family living expenses in community property be reduced by the total amount of such expenses. It is only reasonable to assume that the Legislature in 1945 noticed that Sec. 3 had not been amended so as to provide that a husband or a wife could satisfy the duty imposed upon them by said statute by defraying the cost of necessary support out of community funds, which was in keeping with the provisions of the Community Property Acts and community property case law, and in order to cure what it apparently considered to be a hiatus amended said section. Its action in this particular did not, however, mean that the legislature intended to amend the Community Property statutes by implication or otherwise.

■ The payment by Protestant and his wife of family living expenses out of community funds served to reduce their

community property by the amount of such payments, and when the husband subsequently gratuitously transferred to his wife as community property, property of a value in excess of the value of her community property interest, he made a gift to her in an amount represented by the value or amount of said difference which was subject to gift taxes.

The order of the Commission is affirmed.

WILLIAMS, V. C. J., and CORN, HALLEY, JACKSON, and HUNT, JJ., concur.

DAVISON, J., concurs in result.

WELCH and BLACKBIRD, JJ., dissent.